[No. 11888.   Department Two.   September 22, 1914.]

## H. B. ROSE, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS — INJURY TO PASSENGERS — CONTRIBUTORY NEGLIGENCE — EVIDENCE—SUFFICIENCY. A minor killed by falling from a train is guilty of contributory negligence, precluding recovery in an action for his death, where it was shown that the minor, a boy of fourteen years of age, while a passenger on the train, went upon the lower step of the car at an open vestibule, after a warning to the passengers of the danger of standing between the cars and on the steps and after diligent efforts to keep the vestibule closed, and while standing on the lower steps, indulged in exercises by raising and lowering his body while holding onto the rods at the car entrance, thereby greatly increasing his danger, from which position he fell on being struck by the timbers of a bridge, there being nothing in his appearance to indicate to the train crew that he was not of normal temperament and intelligence.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered September 30, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Reversed.

[1]Reported in 143 Pac. 145.

*Geo. T. Reid, J. W. Quick,* and *L. B. daPonte,* for appellant.

*Hugo Metzler* and *Ben S. Sawyer,* for respondent.

PER CURIAM.—This is an action by the respondent against the appellant to recover damages for the death of the respondent's son. On August 31, 1912, the appellant, Northern Pacific Railway Company, at the instance and request of the Tenino Commercial Club, ran an excursion train from Tenino to South Bend and return. The train furnished was a vestibuled train, consisting of some seven cars. The train was not overcrowded, and the passengers, after the train was on its way, exercised considerable freedom in passing from one car to another. The vestibules were then closed, but gradually the passengers began to open them and stand in the vestibules and on the steps of the cars. According to the evidence of the train crew, and that of a number of passengers called by the appellant, the train crew made diligent efforts to keep the vestibules closed, and repeatedly warned the passengers of the dangers of standing between the cars and on the car steps while the train was in motion. Witnesses for the respondent, however, testified to facts tending to show that the crew did not give much heed to the conditions.

The respondent and his two sons were among the excursionists. The elder son was upwards of fourteen years and ten months old, and the younger of the age of nine years. On entering the car, the respondent seated the boys in a passenger coach, and went forward to the smoking car. Sometime thereafter, the elder boy brought the younger one to the father and requested that he take charge of him, asking for permission at the same time to go back to the other end of the car and play with the other young people on the train. The father granted the permission and the elder boy left him. Sometime thereafter, the elder boy got down onto the lower step of a car at an open vestibule, and while standing

with his feet on the lower steps, holding with his hands onto the brass rods at the car entrance, raised and lowered his body by sliding his hands up and down the rods. When his hands were down, his body would protrude for some distance out from the lower car step. While in this position the train passed over a bridge, the upper frame of which came into contact with the boy's body, throwing him from the train and killing him instantly.

It is not in evidence that any of the train crew saw the boy in this dangerous position, nor was it shown that the bridge was of unusual construction. The respondent's counsel cites the witness Anderson as testifying that the timber was unusually close, but a reading of his testimony does not bear out the claim. In answer to a direct question put to him by counsel himself, he stated that he did not "believe it was closer than any other."

The boy was of the usual development for one of his age, and nothing in his appearance indicated that he was not of average intelligence. It was shown, also, that he possessed more than the average knowledge of the movement and character of railway trains and of the roads over which they ran; it being shown that he had lived for a number of years in a town on the main line of the appellant railway company, over which many trains passed daily.

At the conclusion of the evidence, the appellant moved for a directed verdict in its favor, based on the grounds that the evidence failed to show actionable negligence on its part, and that contributory negligence affirmatively appeared on the part of the boy who met with his death. The motion was denied and the cause submitted to the jury, who returned a verdict in respondent's favor for $1,500. From the judgment entered thereon, this appeal is prosecuted.

We think the motion for a directed verdict should have been granted. While it may be that the evidence justified submitting to the jury the question of the appellant's negligence, we think there can be no two opinions as to the con-

tributory negligence of the boy himself.   His conduct was foolhardy in the extreme.   He was riding at a place on the car not intended to be ridden upon by passengers, and in addition to this, engaged while there in exercises which greatly increased his danger.   Since there was nothing in his appearance that indicated to the train crew that he was not of normal temperament and intelligence, his conduct, in determining the appellant's liability therefor, is to be measured by the average temperament and intelligence of persons of his own age and experience, not by any peculiarity of his own.   It seems to us too much to say that a boy close to his fifteenth year would not know that it was dangerous to attempt to ride on the lower step of a train while it was moving with the usual speed between stations, and that a boy of much younger years would know that it was extremely dangerous to engage in exercises such as he engaged in while in that situation.

We are not unmindful of the rule that a youth of his age is not to be held to the same degree of care that a person of mature years is held.   This we have held in a number of cases, particularly in cases between master and servant where the master has placed the servant in a dangerous situation, and in cases where children of tender years have been injured by so-called attractive nuisances.   But the rule does not absolve a youth from all care.   He must still exercise that degree of care commensurate with his age, and if he fails so to do, he is guilty of contributory negligence.

The judgment is reversed, and remanded with instructions to dismiss the action.